**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
JOSE TORRES,

                                    Petitioner,

                                                            **REPORT &**
                                                            **RECOMMENDATION**
                    - against -

                                                            CV 08-414 (JS) (AKT)

ROBERT ERCOLE, SUPERINTENDENT of
the UPSTATE CORRECTIONAL FACILITY,

                                    Respondent.

----------------------------------------------------------X

**A. KATHLEEN TOMLINSON,  Magistrate Judge:**

        Jose Torres ("Torres" or "Petitioner") petitions this Court for a writ of *habeas*

*corpus*, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court.  *See*

DE 1.  District Judge Seybert referred this matter to me for a Report and

Recommendation as to whether the petition should be granted.  DE 9.

        Following a jury trial in the County Court, Suffolk County, the Petitioner was

convicted on November 21, 2003, for the Criminal Sale of a Controlled Substance in the

First Degree (N.Y. Penal Law § 220.43) and the Criminal Possession of a Controlled

Substance in the Second Degree (N.Y. Penal Law § 220.18).  He was sentenced to an

indeterminate term of eighteen years to life for the first-degree sale of a controlled

substance count and five years to life for the second-degree possession of a controlled

substance count, both counts to run concurrently, and each with five years post-release

supervision.  Following the Drug Law Reform Act of 2004, Petitioner was re-sentenced

to a determinate term of eighteen years for the criminal sale count and a determinate term

of eight years for the criminal possession count, both counts to run concurrently, and

each with five years post-release supervision.  The terms of the re-sentencing were

subsequently modified, in the interest of justice, to determinate terms of twelve years for the criminal sale count and eight years for the criminal possession count, both counts to run concurrently, and each with five years post-release supervision.

The Petitioner challenges his conviction on the grounds that the evidence offered at trial was legally insufficient to establish his guilt beyond a reasonable doubt. Specifically, Torres contends that the evidence at trial was legally insufficient to (1) rebut his agency defense; and (2) prove constructive possession beyond a reasonable doubt.

For the following reasons, the Court respectfully recommends to Judge Seybert that Petitioner's request for a writ of *habeas corpus* be denied in its entirety.

## I. BACKGROUND

### A. Factual Background[1]

On December 21, 2001, at approximately 12:30 p.m., Jose Torres met Detective Ronald Stoever, an undercover police officer, in Hauppauge, New York for the ostensible purpose of conducting a drug sale. Tr. at 494-508. A police informant, Frank Cottone, facilitated the transaction by introducing Detective Stoever to Torres.[2] Tr. at 489-92. Cottone testified that he knew Torres through mutual friends and believed Torres could provide him with drugs. Tr. at 408-10. Cottone testified that he believed this because he sold twenty-five to fifty ecstasy pills to Torres weekly since the summer of 2001, and that amount was, in his opinion, consistent with reselling. Tr. at 412-19. Samuel Silva

---

[1] Citations to the trial transcript are referenced hereafter as "Tr. at ___."

[2] Frank Cottone began locating drug dealers as part of his agreement to cooperate with the District Attorney's Office. Cottone was arrested on December 7, 2001 following a sale of four hundred ecstasy pills to Detective Stoever. Tr. at 429. Police also found ecstasy and cocaine in Cottone's home during the arrest. Tr. at 404. Cottone was charged with the criminal sale of a controlled substance in the second degree and criminal possession of a controlled substance in the third degree. Tr. at 429-30.

corroborated this testimony, stating that Torres, whom he knew because Torres was a customer at the barbershop where Silva worked, told him that he sold drugs for income.[3] Tr. at 450.

In December 2001, a few days prior to Torres' arrest, Cottone called Torres and asked if Torres could get him cocaine. Tr. 420-21. Torres then contacted Silva, saying that his friend needed three ounces of cocaine. Tr. at 459-60. Silva, in turn, contacted his supplier who agreed to meet solely with Silva to give him the cocaine. Tr. at 461. Torres then responded to Cottone that he could get cocaine for $700 per ounce, or $2,100 for three ounces. Tr. at 421-22, 492. Cottone responded that "Billy" (Detective Stoever), was a friend, coworker, and partner in the drug trafficking sale business and that Billy would call Torres. Tr. at 579. Cottone then told Detective Stoever that Torres could sell him three ounces of cocaine after 10:00 p.m. on December 20, 2003. Tr. at 492. For work related reasons, Detective Stoever asked Cottone to delay the sale until the following morning. Tr. at 491-93.

Prior to the transaction, Detective Stoever spoke with his supervisor and arranged backup officers for purposes of security as well as recording, videotaping, and photographing the deal. Tr. at 509. In addition, Detective Stoever drew out $2,100 of pre-recorded money and obtained a radio transmitter by which the sale would be monitored and recorded. Tr. at 509-11. Stoever dressed in work clothes to make it appear that he was coming from a construction job with Cottone. Tr. at 512. Stoever testified that he did not plan to arrest the Petitioner after the sale because he was treating their meeting as an ongoing narcotics sale investigation in which he would attempt to

---

[3] As a result of the drug transaction at issue in this case, Samuel Silva pleaded guilty to criminal sale of a controlled substance in the first degree.

observe, gather information, and identify other associates in the trafficking group without compromising his or Cottone's identity. Tr. at 512-14.

On the morning of December 21, 2003, Detective Stoever had two phone conversations with Torres, during which Torres confirmed that he could sell him three ounces of cocaine for $2,100 that day. Torres instructed Stoever to meet him near Route 111 and the Long Island Expressway in Hauppauge, New York. Tr. at 494. Detective Stoever subsequently drove to a Mobil gas station on Route 111 at approximately 11:45 a.m., but did not see a white Dodge Neon that Torres told him he would be driving. Tr. at 531. Detective Stoever called Torres and Torres appeared and entered Stoever's vehicle. Tr. at 516. Upon entering Stoever's vehicle, Torres said that he did not have the cocaine and that they would have to go to another location. Tr. at 516. Detective Stoever then asked Torres if he wanted to check the money but Torres responded that he trusted him and got back into his own car. Tr. at 516. Detective Stoever testified that Torres never counted the money. Tr. at 584.

Detective Stoever followed Torres toward the Bayshore area, to a shopping center located on the east side of Fifth Avenue near New Hampshire Avenue. Tr. at 517. Detective Stoever observed Torres speaking on his cell phone. Stoever testified that he later learned that Torres was speaking to Silva before Torres entered Stoever's car. Tr. at 583-84. Detective Stoever expressed to Torres his concern about the location of the meeting because it was almost directly across the street from the Suffolk County Police Third Precinct. Tr. at 517-18. Torres responded that he was from the neighborhood, he knew what was going on around the area, and that everything would be all right. Tr. at 517-18.

Two to three minutes later, Silva entered Detective Stoever's car and said he was waiting for his supplier to arrive. Tr. at 519. Torres then told Detective Stoever that he was "just doing a favor." Tr. at 520. Cottone denied asking Torres for the cocaine as a personal favor. Tr. at 441.

Silva then requested the money, which Detective Stoever provided. Tr. at 527. After counting the money, Silva told Detective Stoever that he was going to a nearby parking lot alone to meet his supplier because his supplier had stated that he did not want to meet Stoever. Tr. at 527. Silva then returned, holding a foil popcorn bag. Tr. at 526. From the popcorn bag, Silva removed a clear bag that contained a light-colored powder substance. Detective Stoever asked Silva to place the clear bag on a digital weight scale. Tr. at 526. Silva requested a portion of the substance and removed approximately three grams from the bag. Then Detective Stoever removed the bag from the scale. Tr. at 527. During the transaction, Torres remained in the front seat of the vehicle with Detective Stoever. Tr. at 589. At the end of the transaction, Torres told Stoever to call in the future. Tr. at 589. Then both Silva and Torres exited Stoever's car and Stoever drove away from the location. Tr. at 589.

Detective Stoever met with Cottone on December 27, 2001 to discuss a second potential transaction with Torres. Tr. at 544. At that time, Cottone called Torres on the phone in an attempt to set up another deal. Tr. at 544. Detective Stoever also spoke directly to Torres the next day, December 28, to ask about a second transaction. Tr. at 547. Both of these conversations were recorded and played at trial for the jury. Tr. at 551-52. Torres seemed "agitated" during these conversations, stating that he was waiting for a package from Cottone and would not conduct another cocaine sale with Stoever

until he received a package from Cottone. Tr. at 548. Detective Stoever was not sure what the "package" contained, but Cottone testified that Torres refused a second transaction unless Cottone gave him ecstasy. Tr. at 425-26. Detective Stoever testified that he did not conduct any further transactions with Torres. Tr. at 589.

Defense counsel made an application to dismiss the criminal possession charge at the close of the People's case on November 18, 2003. Tr. at 615. Defense counsel stated that the People presented no evidence that the defendant ever possessed the cocaine. Tr. at 615-18. The application was denied. Tr. at 616-18.

On November 21, 2003, at the conclusion of the jury trial, Petitioner was found guilty of Criminal Sale of a Controlled Substance in the First Degree (N.Y. Penal Law § 220.43), and Criminal Possession of a Controlled Substance in the Second Degree (N.Y. Penal Law §220.18). On April 27, 2004, Petitioner was sentenced in the Suffolk County Court to concurrent indeterminate prison terms of eighteen years to life for the first-degree sale and five years to life for the second-degree possession, both of which counts carried a five year post-release supervision period.

### B.  Procedural History[4]

On April 27, 2004, Petitioner appealed his judgment of conviction and sentence to the Appellate Division, Second Department. Petitioner moved on July 22, 2004, for leave to prosecute his appeal *in forma pauperis*, and for the assignment of counsel. The motion was denied, with leave to renew upon Petitioner's providing affidavits setting forth counsel fees paid to retained counsel. On October 12, 2004, the Petitioner's

---

[4]        All documents that are referenced in this section were included as part of the state court record which was provided to the Court by the Suffolk County Clerk's Office. *See* DE 8, 10.

renewed motion was granted and the Appeals Bureau of the Suffolk County Legal Aid Society was assigned as counsel to prosecute the appeal on Petitioner's behalf.

On August 2, 2005, in the County Court of Suffolk County, Petitioner moved for re-sentencing on the first-degree sale of a controlled substance count pursuant to N.Y. Penal Law § 70.71 and for appointment of counsel. Petitioner's motions were granted on August 11, 2005, and a hearing was set. The Suffolk County Legal Aid Society was appointed to represent the Petitioner. Between the time that Petitioner filed a motion to be re-sentenced and the re-sentencing hearing itself took place, Petitioner also became eligible to be re-sentenced on the second-degree possession of a controlled substance count under the 2005 expansion of the Drug Law Reform Act of 2004.

At the November 3, 2005 hearing, the County Court informed Petitioner that he was eligible to be re-sentenced on both counts. The court specified that it would re-sentence Petitioner to determinate sentences of eighteen years for the first-degree sale of a controlled substance count and eight years for the second-degree possession of a controlled substance count, with each sentence to be served concurrently with the other, plus five years of post-release supervision for each offense. The matter was adjourned to allow Petitioner time to decide whether to withdraw his application to be re-sentenced.

On November 9, 2005, Petitioner appeared before the County Court and declined to withdraw his application. He was subsequently sentenced to determinate sentences of eighteen years on the first-degree sale count and eight years on the second-degree possession count, each to be served concurrently, with five years of post-release supervision for each count.

Then, on November 18, 2005, Petitioner filed a notice of appeal seeking to appeal the judgment of conviction to the Appellate Division, Second Department.[5] On January 23, 2006, the Second Department granted Petitioner's motion to prosecute an appeal *in forma pauperis* from the November 9, 2005, decision and for the assignment of counsel. The Legal Aid Society was again appointed.

The Second Department affirmed the conviction by Order dated December 19, 2006, but modified the re-sentence to twelve years on the criminal sale count. *People v. Torres*, 35 A.D.3d 769, 770, 826 N.Y.S.2d 899, 900 (2d Dep't 2006). The court stated that Petitioner's challenge to the legal sufficiency of his conviction regarding the sale of a controlled substance was unpreserved for appellate review, and was without merit. *Id.* However, the court found that, "as a matter of discretion in the interest of justice," the determinate sentence for the conviction of criminal sale was excessive and reduced the term to twelve years.[6] *Id.*

Petitioner's application for a certificate granting leave to appeal to the New York Court of Appeals was denied on March 29, 2007. *People v. Torres*, 8 N.Y.3d 927, 834 N.Y.S.2d 518 (2007).

---

[5] In his notice of appeal to the New York State Supreme Court, Appellate Division, Second Department dated November 18, 2005, Petitioner incorrectly stated that on November 9, 2005, he was re-sentenced to a determinate term of five years on count two, the possession charge. He was actually re-sentenced to a determinate term of eight years on count two.

[6] In the Second Department's decision, the court mistakenly stated that Petitioner was sentenced to a determinate sentence of fifteen years for his conviction of criminal sale and reduced it to twelve. However, Petitioner was actually sentenced to eighteen years for the criminal sale count. This was confirmed in a letter dated March 30, 2007, from the Appeals Bureau of the Suffolk County Court to the Second Department. The letter clarifies that the sentence was in fact eighteen years and asks the Second Department to send an amended appellate order with the number of years corrected.

Petitioner thereafter moved for an order vacating the judgment of conviction pursuant to CPL § 440.10. Petitioner raised two ineffective assistance of counsel claims. On March 28, 2008, the County Court of Suffolk County denied the motion on the basis that Petitioner had not raised these claims of ineffective assistance on direct appeal.[7] On June 5, 2008, the Second Department denied Petitioner's application for leave to appeal from the decision of the County Court, Suffolk County.

### C.       The Instant Petition

On January 28, 2008, Petitioner filed the instant Petition for a writ of *habeas corpus*. *See* DE 1. Petitioner argues that the evidence offered at trial was legally insufficient to establish his guilt beyond a reasonable doubt. Specifically, the Petitioner contends that the evidence at trial was legally insufficient to (1) rebut his agency defense; and (2) establish constructive possession.

Respondent, Robert Ercole, Superintendent of the Upstate Correctional Facility, opposes the Petition primarily on two grounds. First, the Respondent argues that Petitioner's claims are not reviewable since Petitioner did not properly preserve his claims for appellate review. Second, Respondent maintains that Petitioner cannot establish that the state court's decisions are contrary to or rely on an unreasonable application of clearly established federal law.

## II.    STANDARD OF REVIEW

A federal court's review of a state prisoner's petition for a writ of *habeas corpus* is governed by 28 U.S.C § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides, in relevant part:

---

[7]     These claims are not raised in the pending Petition and will not be addressed by this Court.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits on State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an *unreasonable application* of *clearly established Federal law*, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Dunlap v. Burge*, 583 F.3d 160, 164 (2d Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). The Supreme Court has stated that a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Lastly, the state court's factual findings are entitled to a high degree of deference and it is the petitioner who bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Young v. Walker*, 341 F.3d 104, 109 (2d Cir. 2003).

## III.   D<small>ISCUSSION</small>

### A.   **Procedural Default**

Respondent contends that Petitioner failed to preserve his sufficiency of the evidence claim in regard to the sale count and is therefore procedurally barred from asserting this claim. The Second Department expressly denied Petitioner's claim alleging insufficiency of the evidence regarding his conviction for the first-degree sale of a controlled substance on the grounds that Petitioner's objection was not preserved for appellate review as required by New York State law. *See People v. Torres*, 35 A.D.3d 769, 770, 826 N.Y.S.2d 899, 900 (2d Dep't. 2006).

It is a fundamental tenet that claims rejected by state courts on adequate and independent state procedural grounds cannot provide a basis for *habeas* relief. *See Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). Under New York law, an issue is properly preserved for appeal only if the appellant objected on those grounds in the court below. *See Glenn v. Bartlett*, 98 F.3d 721, 724 n.2 (2d Cir. 1996) (citing *People v. Cona*, 49 N.Y. 2d 26, 33-34, 399 N.E.2d 1167, 1169 (1979)) (concluding that petitioner's failure to object to court's charge regarding application of the accomplice corroboration rule to a witness's testimony failed to "create and preserve a question of law amenable to appellate review"); *see also Dixon v. Miller*, 293 F.3d 74, 80 (2d Cir. 2002) (holding that petitioner's failure to specifically object to state's failure to establish his knowledge of the weight of drugs as an element of criminal possession of a controlled substance in the first degree procedurally barred the claim from being raised in petitioner's *habeas corpus* petition). The Second Circuit has recognized that New York's preservation rule

constitutes independent and adequate state procedural grounds on which the Appellate Division may deny a criminal defendant's appeal. *See Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules."); *see also Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (preservation rule was independent and adequate state ground for rejecting petitioner's direct appeal); *Richardson v. Greene*, 497 F.3d 212, 217-18, 220 (2d Cir. 2007) (preservation rule was independent and adequate state ground for denying petitioner's collateral attack); *Brown v. New York*, No. 04 CV 1087, 2006 WL 3085704, at *2 (E.D.N.Y. Oct. 30, 2006) ("When a habeas corpus Petitioner defaults a federal claim in state court . . . by failing to preserve the claim for state appellate review . . . the independent and adequate state ground doctrine bars federal habeas corpus review.").

In this case, the Court concludes that both of Petitioner's claims are procedurally barred from review since they were unpreserved for appeal.[8] At the close of the People's case, defense counsel made a motion to dismiss the charge of criminal possession of a controlled substance in the second degree. Tr. at 615. He claimed the People had failed to present sufficient evidence to prove that Torres was in possession of the cocaine. Tr. at 615-19. Defense counsel did not, however, raise a motion to dismiss the count of criminal sale of a controlled substance in the first degree. Tr. at 618-19. In fact, counsel specifically stated, "the question of sale is still out there." Tr. at 615. After the application was made to dismiss the possession count, no objections were renewed. Tr. at 793.

---

[8] However, even assuming *arguendo* that these claims are reviewable, they are substantively without merit, as discussed *infra*.

At the end of the trial, after the jury's verdict was read, the judge asked defense counsel if he had any applications. Tr. at 793. Counsel responded, "I reserve any motions for a later time." Tr. at 793. However, defense counsel made no motions after the trial and no applications were made at the sentencing. Because the objection to the possession charge was not renewed at the end of the trial, and because no motions were made regarding the sale charge, Petitioner's challenge to the sufficiency of the evidence are unpreserved for appeal.

**B.     Substantive Argument – Sufficiency of the Evidence**

Petitioner claims that he was deprived of a fair trial and his due process rights because the evidence was insufficient to prove his guilt beyond a reasonable doubt. Specifically, Petitioner argues that the evidence at trial was legally insufficient to (1) rebut his agency defense, and (2) establish constructive possession. *Id.* For the following reasons, the Court finds that there was sufficient evidence for a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the Petitioner guilty beyond a reasonable doubt on the counts of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the second degree.

The law regarding *habeas* relief from a state conviction based on a claim of insufficiency of the evidence is well established. "[A] Petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir. 2007) (quoting *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000)); *see also Mannix v. Phillips*, 619 F.3d 187, 201 (2d Cir. 2010); *Knapp v. Leonardo*, 46 F.3d 170,

178 (2d Cir. 1995). As such, "in a challenge to a state criminal conviction under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Policano*, 507 F.3d at 115-16 (quoting *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)); *see also People v. Contes*, 60 N.Y.2d 620, 621, 454 N.E.2d 932, 932-33 (1983) (stating the standard for review of the legal sufficiency of evidence in a criminal case is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (quoting *Jackson,* 443 U.S. at 319).

A federal court reviewing a *habeas corpus* petition from a state prisoner based on a claim of insufficiency of the evidence must look to state law to determine the elements of the offense in issue. *See Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (citing *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)). Just as courts defer to juries for their function of assessing credibility of testimony in coming to a determination as to guilt or innocence, *habeas* courts must also defer to the appellate courts' review of those findings. *See Ventura v. Meachum*, 957 F.2d 1048, 1054-55 (2d Cir. 1992). A reviewing court must defer to the jury's resolution of all questions regarding the credibility of witnesses, the inferences to be drawn, and the weight of the evidence, and must credit every inference that could have been drawn in the People's favor. *See Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992); *United States v. Rosa*, 11 F.3d 315, 337 (2d Cir. 1993); *United States v. Rea*, 958 F.2d 1206, 1221-22 (2d Cir. 1992); *United States v. Jacobo*, 934 F.2d 411, 415 (2d Cir. 1991). Thus, a court

determining a *habeas* petition will not grant relief on a sufficiency of the evidence claim unless the record is "so totally devoid of evidentiary support that a due process issue is raised." *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994) (quoting *Mapp v. Warden, New York State Corr. Inst. For Women*, 531 F.2d 1167, 1173 n.8 (2d Cir. 1976), *cert. denied*, 429 U.S. 982 (1976)).

### 1. Evidence Regarding Criminal Sale

Petitioner argues that the People presented insufficient evidence to rebut his agency defense. Specifically, the Petitioner claims that because he was doing a favor for the buyer,[9] he was acting as buyer's agent, and, consequently, criminal liability for a sale does not attach. By Order dated December 19, 2006, the Second Department rejected this argument and held that "viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." This Court concurs with the Second Department's findings – there was sufficient evidence to rebut Petitioner's agency defense and prove criminal liability for the count of criminal sale in the first degree.

New York law defines criminal sale of a controlled substance in the first degree as follows:

> A person is guilty of criminal sale of a controlled substance in the first degree when he knowingly and unlawfully sells one or more preparations, compounds, mixtures or substances containing a narcotic drug and the preparations, compounds, mixtures or substances are of an aggregate weight of two ounces or more.

N.Y. Penal Law § 220.43(1). However, a person is not guilty of selling a controlled substance if he was acting as the agent of the buyer. *See Washington v. James*, 996 F.2d

---

[9]     The trial court determined that for purposes of law, both Frank Cottone and Detective Stoever were jointly to be considered the buyer in the transaction. Tr. at 632.

1442 (1993); *People v. Roche*, 45 N.Y.2d 78, 81, 407 N.Y.S.2d 682, 684 (1978); *People v. Argibay*, 45 N.Y.2d 45, 53-54, 407 N.Y.S.2d 664, 668 (1978). An agent of a buyer is a person who is a "principal in or is conspiring in the purchase rather than the sale of the contraband." *United States v. Masullo*, 489 F.2d 217, 221 (2d Cir. 1973); *accord People v. Dobie*, 249 A.D.2d 411, 671 N.Y.S.2d 141, 142-43 (2d Dep't 1988) (finding that an agent is one who "act[s] as an instrumentality of the buyer *rather than as* a seller"). Furthermore, where the evidence shows that "a defendant was not merely accommodating the buyer, but was acting, if not as a principal seller, then at the very least as a middleman or a broker for his supplier," that is sufficient to satisfy the "sale" element of the crime. *Kemp v. New York*, No. 07 CV 6996, 2009 WL 306258, at *11 (S.D.N.Y. Feb. 9, 2009) (citing *Argibay*, 45 N.Y.2d at 50, 407 N.Y.S.2d at 666); *People v. Garay*, 128 A.D.2d 413, 414, 512 N.Y.S.2d 807, 808 (1st Dep't 1987)). Essentially, "[a] middleman who acts as a broker between a seller and buyer, aiming to satisfy both, but largely for his own benefit, cannot properly be termed an agent of either," and thus is not entitled to the benefit of the agency defense. *Kemp,* 2009 WL 306258, at *11 (citing *Argibay,* 45 N.Y.2d at 53, 407 N.Y.S.2d at 668).

The question of whether a defendant acted as an agent of the buyer in a drug transaction is a factual determination for the jury to resolve based upon the circumstances of the transaction, including the role the defendant played in each case. *See Dobie*, 249 A.D.2d at 412, 617 N.Y.S.2d at 142-43; *see also People v. Chong*, 45 N.Y.2d 64, 74, 407 N.Y.S.2d 674, 680 (1978). A defendant's anticipation, or receipt of "profit from the sale may be sufficient to establish his intent to sell," and disqualify him from the benefits of an agency defense. *Harris v. Alexander*, 548 F.3d 200, 204 (2d Cir. 2008) (quoting

*Chong*, 45 N.Y.2d at 75, 407 N.Y.S.2d at 680). However, the benefit of an agency defense is not forfeited merely because the purchaser-principal offers the defendant a share of the narcotics for consumption or "a tip or reimbursement for expenses as a token of friendship or appreciation for the favor." *Id.* In *Chong*, the New York Court of Appeals set forth several factors a jury may consider in weighing an agency defense: the relationship between the defendant and the buyer, whether it was the buyer or the defendant who suggested the purchase, whether the defendant has had other drug dealings with this or other buyers or sellers, and whether the defendant profited or stood to profit from the transaction. 45 N.Y.2d at 75, 407 N.Y.S.2d at 680-81.

In *People v. Nealon*, the Third Department held that the People presented persuasive, consistent testimony by an undercover detective and confidential informant that rebutted the defendant's agency defense. 26 A.D.3d 1076, 1077, 827 N.Y.S.2d 359, 360 (3d Dep't 2007). The court held that the testimony supported a conclusion that the defendant initiated contact, had no relationship with either the detective or confidential informant, readily agreed to provide drugs, and directed them to where drugs would be obtained. *Id.*

In the instant case, the People presented sufficient evidence to the jury to rebut Petitioner's claim that he was merely an agent for the buyer. Cottone testified that his relationship with the Petitioner was solely drug related and that he never asked the Petitioner to get him cocaine as a personal favor. Tr. at 441. Cottone described Petitioner not as a "low-level customer" but as one who bought approximately twenty-five to fifty ecstasy pills from him weekly. Tr. at 412. This amount of ecstasy was, in Cottone's opinion, consistent with reselling. Tr. at 418.

17

Petitioner's actions with regard to setting up and executing the transaction suggests that he was not an agent for the buyer.  Approximately one week after Cottone initially contacted Petitioner, Petitioner informed Cottone that he could provide him with an ounce of cocaine for $700.  Tr. at 422.  The Petitioner also actively arranged meetings with Detective Stoever – initially for the evening of December 20, 2001, through Cottone, which meeting was then rescheduled for the following afternoon after the Petitioner spoke to Stoever directly.  Tr. at 492-94.  Petitioner met Detective Stoever in person at the first location off the Long Island Expressway, then further led him to Fifth Avenue in Bay Shore where the Petitioner introduced Stoever to Samuel Silva.  Tr. at 494.  The Petitioner remained with Detective Stoever in Stoever's car throughout the entire transaction, reassuring Stoever after Stoever's expressed concern about their close proximity to the Third Precinct.  Tr. at 491-589.

With regard to the "receipt of profit," the People presented sufficient evidence for a reasonable jury to infer that Petitioner stood to profit from the transaction.  Stoever testified that Petitioner repeatedly told him that he was only involved as a favor to Cottone and that he was not profiting from the sale.  Tr. at 520.  However, the People also presented testimony from Cottone who denied asking Torres for a favor.  Tr. at 434.  Cottone stated, "[n]othing in drugs is a favor."  Tr. at 434.  The evidence presented was sufficient for a jury to reasonably infer that Torres was not merely accepting "appreciation for the favor" which might otherwise be enough to label a person an agent. *See Harris*, 548 F.3d at 204 (quoting *Chong*, 45 N.Y.2d at 75).  The trial testimony showed that Cottone was Torres' ecstasy supplier.  A reasonable jury could therefore find that Torres conducted the sale with Detective Stoever not as a "token of friendship," but

rather as a way of maintaining his relationship with Cottone so that he could continue to make his living as an ecstasy dealer. *Id.* Testimony was also elicited that Torres conditioned his future cocaine sales to Detective Stoever on his being re-supplied with ecstasy by Frank Cottone. Tr. at 426, 548. Furthermore, there was sufficient evidence for a jury to infer that Torres could directly profit in the future from Stoever. Stoever testified that at the end of the transaction, Torres told Stoever to call him in the future – a request that could be reasonably understood by the jury to be an invitation to set up a future drug transaction. Tr. at 589.

Viewed in the light most favorable to the prosecution, the evidence was sufficient to rebut Petitioner's agency defense. A jury was able to examine the evidence fairly and ultimately decide that Petitioner was not a mere agent of the buyer, but rather that he possessed the requisite mental culpability in intentionally aiding his co-defendant, Silva, in making the sale. Accordingly, the Court finds that Petitioner's claim of insufficient evidence with regard to the charge of criminal sale of a controlled substance in the first degree is without merit and does not provide a basis for *habeas* relief. *See Mannix*, 619 F.3d at 201.

### 2. *Evidence Regarding Criminal Possession*

The Petitioner also argues that there was insufficient evidence to convict him of criminal possession of a controlled substance beyond a reasonable doubt. Specifically, the Petitioner claims the evidence did not establish that he had any control over the cocaine or the seller and, therefore, he cannot be guilty of constructively possessing the cocaine.

New York law defines criminal possession of a controlled substance as follows:

> A person is guilty of criminal possession of a controlled substance in the second degree when that person knowingly and unlawfully possesses one or more preparations, compounds, mixtures or substances containing a narcotic drug, and said preparations, compounds, mixtures or substances are of an aggregate weight of two ounces or more.

N.Y. Penal Law § 220.18(2). "'Possess' means to have physical possession or otherwise to exercise dominion or control over tangible property." N.Y. Penal Law § 10.00(8). It was not contended in this case that Petitioner had physical possession of the cocaine; the sole issue was whether he had *constructive* possession of the controlled substance.

In New York, to support a charge that a defendant was in constructive possession of tangible property, the People must show that the defendant knowingly had the power and the intention to exercise dominion and control over an object, either directly or through others. *See* N.Y. Penal Law § 10.00(8); *United States v. Iqbal*, 117 F. App'x 155, 158 (2d Cir. 2004) (finding that evidence was sufficient to prove constructive possession of heroin sold to undercover police agent by virtue of defendant accompanying coconspirator to several drug transactions and being aware that the money exchanged was for drugs); *United States v. Teague*, 93 F.3d 81, 84 (2d Cir. 1996) (to prove possession, the Government must adduce evidence showing that defendant "*knowingly* [had] the power and the intention . . . to exercise dominion and control over the cocaine") (internal quotation marks omitted).

Respondent distinguishes this case from *United States v. Jones*, in which the Second Circuit held that a defendant was merely a "casual facilitator of sale" and did not constructively possess narcotics. 308 F.2d 26, 30 (2d Cir. 1962). In *Jones*, the defendant

took pains to find the actual seller of narcotics and did not discuss price or the place of delivery with the buyer until the defendant first spoke with the seller. After the transaction ended, the seller, not the defendant, told the buyer to purchase directly from him in the future and not to deal with anyone else. 308 F.2d at 30. The court in *Jones* noted, however, that "one having a working relationship or a sufficient association with those having physical custody of the drugs so as to enable him to assure their production, without difficulty, to customer as a matter of course may be held to have constructive possession." *Id.* (citing *United States v. Hernandez*, 290 F.2d 86, 90 (2d Cir. 1961)). In addition, "[p]roperly admitted evidence showing that a given defendant set the price for a batch of narcotics, had the final say as to means of transfer, or was able to assure delivery, may well be sufficient to charge the defendant with a constructive possession of the narcotics . . . ." *Id.* at 31.

Respondent argues that unlike the defendant in *Jones*, there was evidence in the instant case showing that Torres had control over "the means of transfer," and "assured the delivery." Therefore, Respondent concludes, it was not irrational for a jury to infer that Petitioner had dominion or control over the drugs in Detective Stoever's vehicle, and, consequently, was in constructive possession of the drugs. This Court agrees. There was more than sufficient evidence at trial for a reasonable trier of fact to find that Torres constructively possessed the cocaine at issue. A jury could reasonably infer that Petitioner and co-defendant Silva made the deal happen and without Torres' participation, the drug transaction would not have occurred. Unlike the defendant in *Jones*, Torres called Cottone to inform him that he could get him cocaine for $700 per ounce. Tr. at 421-22, 492. Torres knew exactly who to call to obtain the drugs. Torres

communicated directly with Detective Stoever to set up the transaction. Torres and Stoever continuously communicated until they found an agreeable location and time. Tr. at 494. When Stoever became concerned about their close proximity to a police station, Torres reassured Stoever by telling him he knew the neighborhood and that everything was fine. Tr. at 517-18. When Detective Stoever met with Torres and offered him the money, Torres told Stoever that he trusted him and that he did not need to count the money. Tr. at 516. Based on these actions, a reasonable jury could conclude that Torres did this to build a rapport with Stoever in order to cultivate a relationship for future transactions. Furthermore, Torres did not make a comment about the money going straight to Silva or to Silva's supplier. He did nothing to suggest that he was not in control of the cocaine or the money he received in exchange for the cocaine. A jury's verdict may be based entirely on circumstantial evidence and the prosecution's case need not refute every possible hypothesis supporting a defendant's innocence. *See Dixon v. Miller*, 293 F.3d 75, 81 (2d Cir. 2002) (citing *United States v. Libera*, 989 F.2d 596, 601 (2d Cir. 1993)); *United States v. Friedman*, 998 F.2d 53, 59 (2d Cir. 1993)). The totality of the circumstances presented by the prosecution in this case is sufficient for a reasonable jury to find that Petitioner was in constructive possession of the drugs.

Therefore, assuming *arguendo* that the insufficiency claim is not procedurally barred from *habeas* review, the Court finds that the evidence nonetheless supports the conviction for criminal possession of a controlled substance in the second degree.

**IV.** **CONCLUSION**

For the foregoing reasons, the Petitioner has failed to demonstrate a basis for relief under 28 U.S.C. § 2254. Accordingly, I respectfully recommend to Judge Seybert that the instant *habeas* petition be DENIED. Further, because the Petitioner has failed to make a substantial showing of a denial of a constitutional right, I also recommend that no certificate of appealability issue.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF, **except in the case of a party proceeding *pro se*. *Pro Se* Plaintiff Jose Torres must file his objections in writing with the Clerk of the Court within fourteen (14) days from service. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Joanna Seybert, and to my Chambers as well. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).**

**SO ORDERED.**

Dated: Central Islip, New York
        January 26, 2012


/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge